UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
                                                      :
IOTA SHIPHOLDING LTD and BLUMENTHAL :
JMK GMBH & CO. KG,                                    :
                                                      :
                                Petitioners,          :       16 Civ. 4881 (KPF)
                                                      :
                      v.                              :       OPINION AND ORDER
                                                      :
STARR INDEMNITY AND LIABILITY                         :
COMPANY, *as a subrogor of* TERNIUM                   :
MEXICO S.A. DE C.V. *and* TERNIUM                     :
INTERNACIONAL COSTA RICA, S.A., and                   :
MARINSA INTERCONTINENTAL, S.A.,                       :
                                                      :
                                Respondents.          :
                                                      :
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 31, 2017

KATHERINE POLK FAILLA, District Judge:

Petitioners[1] Iota Shipholding Ltd. ("Iota") and Blumenthal JMK GmbH &

Co. KG[2] ("Blumenthal," and together with Iota, "Petitioners") brought this

action pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and the

Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"), (i) to enjoin an arbitration

commenced in New York by Respondent Starr Indemnity and Liability

Company ("Starr"), in its capacity as subrogor of Ternium Mexico S.A. de C.V.

("Ternium Mexico") and Ternium Internacional Costa Rica, S.A. ("Ternium

Costa Rica," and together with Ternium Mexico, the "Ternium Entities"), and

---

[1]    The Court refers to the parties as they are designated in the caption of this case.  The
       Court notes, however, that in the arbitration underlying this litigation, the parties' roles
       and designations are reversed.

[2]    Petitioners' Local Rule 56.1 Statement indicates that the correct name for this entity is
       Johann M. K. Blumenthal GmbH & Co. KG.  (Dkt. #19 ¶ 1).

(ii) to declare that there is no valid arbitration agreement between these parties.

The Court has jurisdiction over Petitioners' claim under 28 U.S.C. §§ 1332 and

1333, and Petitioners have designated their claim an admiralty or maritime

claim under Federal Rule of Civil Procedure 9(h).

Petitioners have moved for summary judgment, seeking a declaration

that there is no valid arbitration agreement between these parties and an

injunction or permanent stay of the underlying arbitration. Starr has cross-

moved for summary judgment seeking dismissal of this action and an order

remanding this matter to arbitration. For the reasons that follow, Petitioners'

motion is granted and Starr's motion is denied.

## BACKGROUND[3]

---

[3]     The facts in this Opinion are drawn from the parties' submissions in connection with
their cross-motions for summary judgment, including Petitioners' Local Rule 56.1
Statement ("Pet'r 56.1" (Dkt. #19)), Starr's combined opposition to this statement and
counter Local Rule 56.1 Statement (Dkt. #22), and Petitioner's reply to Starr's counter-
statement ("Pet'r 56.1 Reply" (Dkt. #26)). In addition, the Court has drawn on the
declaration of Starr's counsel, Lawrence C. Glynn. ("Glynn Decl." (Dkt. #23)). Because
Starr's combined opposition to Petitioners' Local Rule 56.1 Statement and counter Local
Rule 56.1 Statement has duplicative paragraph enumeration, the Court will refer to the
portion in opposition to Petitioners' Local Rule 56.1 Statement as "Resp't 56.1 Opp."
and the portion comprised of Starr's counter Local Rule 56.1 Statement as "Resp't 56.1"
for ease of reference.

The Court notes that Petitioners' opening and reply 56.1 statements are styled as
declarations of Blumenthal's Chief Executive Officer Heinz-Dieter Czech and Petitioners'
counsel of record Garth S. Wolfson, respectively. (See Dkt. #19, 26). Because the
parties have treated these declarations as Petitioners' Rule 56.1 Statements, the Court
will do the same.

Citations to a party's Local Rule 56.1 Statement incorporate by reference the
documents cited therein. Where facts stated in a party's Local Rule 56.1 Statement are
supported by testimonial or documentary evidence, and denied with only a conclusory
statement by the other party, the Court finds such facts to be true. See Local Rule
56.1(c), (d). Where the parties have marked the same documents as exhibits, the Court
will provide only one citation to the document.

For convenience, the Court will refer to Petitioners' brief in support of their motion for
summary judgment as "Pet'r Br." (Dkt. #20); Starr's brief opposing Petitioners' motion
and supporting Starr's own cross-motion for summary judgment as "Resp't Br." (Dkt.
#24); Petitioners' combined brief replying in further support of their own motion and

2

A.    **Factual Background**[4]

1.    **The Shipment of and Damage to the Ternium Entities' Cargo**

In 2013, Ternium Mexico sold 2,552 bundles of square, rectangular, and mechanical tubing produced in Tampico, Mexico (the "Cargo"), to Ternium Costa Rica. (Petition, Ex. 1, ¶¶ 2, 8). This Cargo was loaded on board the *M/V Lita* in Tampico. (*Id.* at ¶ 7). Starr contends that the Cargo was in good order and condition at the time of its loading. (*Id.* at ¶¶ 8-11).

The *M/V Lita* sailed from Tampico to Puerto Limón, Costa Rica, where the ship arrived on August 6, 2013. (Petition, Ex. 1, ¶ 12). The *M/V Lita* encountered storms during its journey that caused damage to the Cargo; damage surveys found that 40-45% of the total Cargo was damaged. (*Id.* at ¶¶ 13-16). Additionally, two packages of the Cargo were lost overboard. (*Id.* at ¶ 14). Because Ternium "could not affirmatively segregate damaged material on a per bundle/per package basis," it "instead proposed a reasonable depreciation of 42.86% of the total value of the segregated material." (*Id.* at ¶ 18). The physically damaged Cargo was valued at $173,875.14, and the two lost bundles valued at $1,750.17. (*Id.* at ¶¶ 19-20).

---

opposing Starr's motion as "Pet'r Reply" (Dkt. #27); and Starr's brief sur-replying in opposition to Petitioners' motion and replying in support of its own motion as "Resp't Reply" (Dkt. #29). Further, the Court will refer to the Petition for a Stay of Arbitration as the "Petition" (Dkt. #8; *see also* Pet'r 56.1, Ex. 1).

[4]    Unless otherwise indicated, the facts underlying Starr's arbitration claim are not in dispute for purposes of the instant action. Before the Court is only the question of the arbitrability of that claim. The Court provides a brief summary of the alleged facts here for context, but at this stage takes no position on their truth or accuracy.

## 2.    The Maritime Contracts

The Cargo was shipped pursuant to a collection of contracts, which the Court will describe in this section.

### a.    The Voyage Charter

The parties agree that non-party Alexander & Blake Ltd. ("A&B"),[5] chartered the *M/V Lita* to Ternium Mexico pursuant to a Voyage Charterparty dated July 26, 2013 (the "Voyage Charter").  (Resp't 56.1 Opp. ¶ 5).[6]

In Annex I, the Voyage Charter defines certain terms used therein.  (Pet'r 56.1, Ex. 1(C)).  The Charterer is "as stated in ... the beginning of this Charter Party," where the Voyage Charter identifies the "Shipper" as Ternium Mexico.

---

[5]    In Starr's arbitration petition, Starr alleged that Respondent Marinsa chartered the *M/V Lita* from its owners, Petitioners, and then sub-chartered the vessel to Ternium Mexico "pursuant to a voyage Charterparty dated July 26, 2013."  (Petition, Ex. 1, ¶¶ 3-4).  In opposing Petitioners' 56.1 Statement, Starr "admits that the relationship between Marinsa and Blumenthal was misstated in the factual background section of the arbitral submission," and indicates that that section "was meant to state" that A&B "was the party to the voyage charterparty."  (Resp't 56.1 ¶ 5).  "Starr denies that this typo had any impact on [its] substantive allegations against the vessel owners Blumenthal and/or Iota."  (*Id.*).

[6]    "A charter party is a specific contract, by which the owners of a vessel let the entire vessel, or some principal part thereof, to another person, to be used by the latter in transportation for his own account, either under their charge or his."  *Asoma Corp.* v. *SK Shipping Co., Ltd.*, 467 F.3d 817, 823 (2d Cir. 2006) (internal quotation marks omitted) (quoting *The New York*, 93 F. 495, 497 (E.D.N.Y. 1899)).  "The term 'charter party' actually refers to the document in which the terms and conditions of the lease of a vessel by an owner to a charterer are set out."  *U.S. Titan, Inc.* v. *Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 138 n.1 (2d Cir. 2001) (internal quotation marks omitted) (quoting *Great Circle Lines, Ltd.* v. *Matheson & Co.*, 681 F.2d 121, 124 (2d Cir. 1982)).  There are three principal charter arrangements: "[i] Under a time charter, the charterer engages for a fixed period of time a vessel, which remains manned and navigated by the vessel owner, to carry cargo wherever the charterer instructs; [ii] Under a voyage charter, the charterer engages the vessel to carry goods only for a single voyage; and [iii] [U]nder a demise, or bareboat charter, the charterer takes complete control of the vessel, mans it with his own crew, and is treated by law as its legal owner."  2 Thomas J. Schoenbaum, *Admiralty and Maritime Law* § 11-1 (5th ed. 2016); *see also U.S. Titan, Inc.*, 241 F.3d at 138 n.2 (citing 1994 edition of § 11-1 for authoritative definition of a time charter).

4

(*Id.*).  The "Owner" is "the disponent owner of the Vessel who signs the present Charter Party identified at the beginning of this Charter Party," where the Voyage Charter identifies the "Owner of the vessel" as A&B Limited.  (*Id.*).[7]

In its third section, the Voyage Charter outlines a set of requirements for the proper shipment of the Cargo.  As relevant here, this section provides that the liability of the Charterer, Ternium Mexico, "for each shipment under this Charter Party and the Charterer's responsibility for damages to the Cargo ... shall cease ... on Cargo being shipped, lashed[,] and secured."  (Pet'r 56.1, Ex. 1(C)).

The Voyage Charter also contains an arbitration clause, which provides:

> This Charter Party shall be governed by and construed in accordance with English Law (without regard to conflict of law rules and principles).  Should any dispute arise between Owner and Charterer, the matter in dispute shall be [referred] to three arbitrators in New York/London, one to be appointed by each of the parties hereto, and the third by the two so chosen.  Their decision or that of any two of them shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of court.  The arbitrators shall be commercial men.  The proceeding shall be conducted in accordance with the rules of the Society of Maritime Arbitrators, Inc.

(Pet'r 56.1, Ex. 1(C), ¶ 15) (emphasis omitted).

---

[7]    "A disponent owner does not hold legal title to a vessel, but for purposes of the charter party acts as if he does."  *Mariac Shipping Co.* v. *Meta Corp. N.V.*, No. 05 Civ. 2224 (LAK) (GWG), 2007 WL 1662067, at *1 (S.D.N.Y. June 11, 2007) (internal quotation marks omitted) (quoting *Andros Compania Maritima, S.A.* v. *Marc Rich & Co., A.G.*, 579 F.2d 691, 693 n.1 (2d Cir. 1978)).  Rather than holding legal title, "a disponent owner rents the vessel from the true owner under a time charter and then enters into contracts for the carriage of goods."  *Ocean Prods., Inc.* v. *Molinos Rio de la Plata, S.A.*, No. 98 Civ. 3487 (DC), 1999 WL 239692, at *1 (S.D.N.Y. Apr. 22, 1999) (citing *Andros Compania Maritima*, 579 F.2d at 693 n.1; *Fairmont Shipping (H.K.), Ltd.* v. *Primary Indus.*, No. 86 Civ. 3668 (SWK), 1987 WL 9433, at *2 n.4 (S.D.N.Y. Apr. 7, 1987)).

### b.    The Bills of Lading

The parties also agree that upon the shipment of the Cargo from Tampico, "CONGENBILL" form bills of lading were executed "by [Respondent Marinsa Intercontinental, S.A. ('Marinsa') [o]nly as ship's port agents for & on behalf of the master and to incorporate by reference a CHARTER-PARTY dated JULY 26, 2013." (Pet'r 56.1 ¶ 9 (internal quotation marks omitted) (quoting Petition, Ex. 1(D)).  Each bill of lading identifies the "Shipper" as Ternium Mexico, the "Consignee" as Ternium Costa Rica, and the Carrier as the "Owners MV 'Lita.'" (Petition, Ex. 1(D)).  The Master of the M/V Lita is identified on the Bills of Lading as the ship's Captain, Franczyk Jerzy.  (*Id.*).

The Bills of Lading direct that their "[f]reight [is] payable as per CHARTER-PARTY dated JULY 26, 2013." (Petition, Ex. 1(D)).  For their "CONDITIONS OF CARRIAGE," the Bills of Lading direct a reader to "SEE OVERLEAF." (*Id.*).  Thereon, each bill of lading notes that it is "to be used with charter-parties." (*Id.* (emphasis omitted)).  And the first-listed condition of carriage in each case specifies that "[a]ll terms and conditions, liberties and exceptions of the Charter Party, dated as overleaf, including the Law and Arbitration Clause, are herewith incorporated." (*Id.*).

### c.    The Time Charter

It is with regard to this contract that the parties' positions diverge. Petitioners allege that A&B chartered the *M/V Lita* to Ternium Mexico under the Voyage Charter in A&B's capacity as a disponent owner, having itself chartered the *M/V Lita* from its true owners under a time charter that is also

dated July 26, 2013 (the "Time Charter"). (*See* Petition ¶ 12; Pet'r 56.1 ¶¶ 10-14; Pet'r 56.1, Ex. 2; Pet'r 56.1 Reply ¶¶ 3-13). This Time Charter "calls for arbitration exclusively in Germany, and further expressly prohibits issuance of bills of lading prejudicial to the Time Charter's provisions." (Pet'r 56.1 ¶ 11 (citing *id.*, Ex. 2)). The parties agree that a time charterer was permitted to sub-charter the time-chartered vessel, though the Time Charter's terms provided that if they did so, Time "Charterers [would] remain responsible for the fulfillment of [the Time Charter]. In the case of any dispute, between charterers and owners, the charterers have to fulfill their obligations toward[] the owner with priority." (Pet'r 56.1 Reply ¶ 16 (quoting Pet'r 56.1, Ex. 2, ¶ 18)).

In response, Starr argues that this "purported 'fixture agreement' is not an agreement at all," but "merely an email sent from [A&B] to an undisclosed recipient." (Resp't 56.1 ¶¶ 3-4; *see also id.* at ¶¶ 5-13). Starr explains that the email attaches three documents, one of which is not included in Petitioners' submission, and the other two of which consist of the text of the email and "an older time charterparty dated March 5, 2013[,] between Blumenthal and non-party Pacific Basin Handysize limited Hong Kong." (*Id.* at ¶¶ 5-8). Starr alleges that the body of the email "is merely a list of proposed terms" and not a final agreement, which is evidenced by the email's instruction that its recipient "kindly reconfirm." (*Id.* at ¶¶ 9-10). And Starr notes that the "purported 'fixture' does not mention arbitration[.]" (*Id.* at ¶ 14).

### 3.    The Underlying Arbitration

On August 6, 2015, counsel for the Ternium Entities and "respective interested cargo underwriters" sent Petitioners a demand for arbitration. (Glynn Decl., Ex. J).[8]  The demand specified that the Ternium Entities and interested underwriters sought $175,625.30 for the damage caused to and the loss of the Ternium Entities' steel products shipped aboard the *M/V Lita* from Tampico, Mexico, to Puerto Limón, Costa Rica, between July 13, 2013, and August 6, 2013 (the "Cargo Claim").  (*Id.*; *accord* Resp't 56.1 Opp. ¶ 4).  The arbitration was commenced "pursuant to relevant bills of lading and [the] arbitration clause contained in the voyage charterparty dated July 26, 2013." (Resp't Br. 1).  "Marinsa has not answered the arbitration."  (*Id.*).

### B.    Procedural Background

Petitioners disputed the arbitrability of the Cargo Claim, and brought the instant action to enjoin this arbitration on June 23, 2016.  (*See* Petition).  On August 2, 2016, Petitioners filed a letter requesting a pre-motion conference (Dkt. #16), which was held on August 12, 2016 (*see* Docket Entry dated August 12, 2016).  The Court subsequently issued a briefing schedule for the parties' contemplated cross-motions for summary judgment.  (Dkt. #17). Petitioners filed their motion for summary judgment on September 8, 2016

---

[8]    On two previous occasions, Blumenthal's lawyers had agreed to extensions of time for the commencement of arbitration.  (*See* Glynn Decl. Ex. H, I).  Because the Court resolves the instant motions without reaching the parties' dispute regarding the identity of the *M/V Lita*'s true owners, the Court will not reach Starr's argument that these extensions should estop Petitioners from denying their ownership of that vessel.  (*See* Resp't Br. 11-16).

(Dkt. #18-20), and Starr its cross-motion on October 18, 2016 (Dkt. #22-25). Petitioners filed their reply on November 7, 2016 (Dkt. #26-27), and Starr its reply on December 2, 2016 (Dkt. #29). Marinsa has not appeared in the instant action.

## DISCUSSION

### A. Applicable Law

#### 1. Summary Judgment

Rule 56(a) instructs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Pace* v. *Air & Liquid Sys. Corp.*, 171 F. Supp. 3d 254, 262 (S.D.N.Y. 2016) (internal quotation marks omitted) (quoting *Dallas Aerospace, Inc.* v. *CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003)). And where, as here, "parties file cross-motions for summary judgment, ... each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Fireman's Fund Ins. Co.* v. *Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 631 n.12 (2d Cir. 2016) (alterations omitted) (internal quotation marks omitted) (quoting *Morales* v. *Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

"A motion for summary judgment may properly be granted … only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law." *Rogoz* v. *City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (internal quotation marks omitted) (quoting *Kaytor* v. *Elec. Boat Corp.,* 609 F.3d 537, 545 (2d Cir. 2010)).  In determining whether summary judgment is merited, "[t]he role of a court … 'is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party.'" *NEM Re Receivables, LLC* v. *Fortress Re, Inc.*, 173 F. Supp. 3d 1, 5 (S.D.N.Y.) (quoting *Knight* v. *U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986)), *reconsideration denied*, 187 F. Supp. 3d 390 (S.D.N.Y. 2016).

A party moving for summary judgment "bears the initial burden of demonstrating 'the absence of a genuine issue of material fact.'" *ICC Chem. Corp.* v. *Nordic Tankers Trading A/S*, 186 F. Supp. 3d 296, 301 (S.D.N.Y. 2016) (quoting *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986)).  "[A] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC* v. *Dep't of Health & Mental Hygiene of City of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson* v. *Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).  And "[a] dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Fireman's Fund Ins. Co.*, 822 F.3d at 631 n.12 (quoting *Anderson*, 477 U.S. at 248).

If the movant satisfies its initial burden, then "the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). To make this showing, a summary-judgment "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, that opponent must adduce "evidence on which the jury could reasonably find for" him. *Anderson,* 477 U.S. at 252.

In cases where the interpretation of a contract is at issue, "a motion for summary judgment may be granted only where the agreement's language is unambiguous and conveys a definite meaning." *Am. Home. Assurance Co.* v. *Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 316 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Sayers* v. *Rochester Tel. Corp. Supplemental Mgmt. Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993)). "Contract language is ambiguous if it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Id.* (quoting *Lightfoot* v. *Union Carbide Corp.*, 110 F.3d 898, 906 (2d Cir. 1997)); *see also Palmieri* v. *Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) ("In determining a motion for summary judgment involving the construction of contractual language, a court should accord that language its plain meaning giving due consideration to the surrounding circumstances and apparent

purpose which the parties sought to accomplish." (internal quotation marks omitted) (quoting *Thompson* v. *Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990)).

## 2. Choice of Law

"When a contract is a maritime one, and the dispute is not inherently local, federal law controls the contract interpretation." *Norfolk S. Ry. Co.* v. *Kirby*, 543 U.S. 14, 22-23 (2004). "Such is the case here, as ... the transaction[] at issue involved [the] international shipment[] of goods by sea." *Mediterranean Shipping Co. (USA) Inc.* v. *Am. Cargo Shipping Lines, Inc.*, No. 13 Civ. 6357 (ER), 2014 WL 4449796, at *4 (S.D.N.Y. Sept. 10, 2014); *see also, e.g.*, *Nippon Yusen Kaisha* v. *FIL Lines USA Inc.*, 977 F. Supp. 2d 343, 349 (S.D.N.Y. 2013). Thus, the relevant "[c]harter parties and bills of lading [must be] interpreted using the ordinary principles of maritime contract law." *Asoma Corp.* v. *SK Shipping Co.*, 467 F.3d 817, 823 (2d Cir. 2006); *see also, e.g.*, *E. River S.S. Corp.* v. *Transamerica Delaval, Inc.*, 476 U.S. 858, 864 (1986) ("Absent a relevant statute, the general maritime law, as developed by the judiciary, applies."). "Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." *E. River S.S. Corp.*, 476 U.S. at 864-65.

## 3. Arbitrability

"The law generally treats arbitrability as an issue for judicial determination 'unless the parties clearly and unmistakably provide otherwise.'" *NASDAQ OMX Grp., Inc.* v. *UBS Secs., LLC*, 770 F.3d 1010, 1031 (2d Cir. 2014) (quoting *Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)); *accord*

*Katsoris* v. *WME IMG, LLC*, No. 16 Civ. 135 (RA), 2017 WL 775849, at *8 (S.D.N.Y. Feb. 27, 2017). But even where parties to a contract commit the question of arbitrability to arbitration, a reviewing court "must always ascertain for itself whether [a] resisting party is subject to a valid arbitration agreement, because even the broadest arbitration clause cannot bind a party who never agreed to it." *Nat'l Union Fire Ins. Co. of Pittsburg* v. *Beelman Truck Co.*, 203 F. Supp. 3d 312, 317 (S.D.N.Y. 2016) (citing *Sarhank Grp.* v. *Oracle Corp.*, 404 F.3d 657, 661 (2d Cir. 2005) ("As arbitrability is not arbitrable in the absence of the parties' agreement, the district court was required to determine whether [Respondent] had agreed to arbitrate."); *Zimring* v. *Coinmach Corp.*, No. 00 Civ. 8111 (LMM), 2000 WL 1855115, at *2 (S.D.N.Y. Dec. 19, 2000)).

"The issue of whether the parties are obliged to arbitrate their dispute therefore breaks down into two questions: '[i] whether the parties have entered into a valid agreement to arbitrate, and, if so, [ii] whether the dispute at issue comes within the scope of the arbitration agreement.'" *Nat'l Union Fire Ins. Co.*, 203 F. Supp. 3d at 316-17 (quoting *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011)); *accord Katsoris*, 2017 WL 775849, at *5 (quoting *Begonja* v. *Vornado Realty Tr.*, 159 F. Supp. 3d 402, 408-09 (S.D.N.Y. 2016)). "[B]ecause of the 'strong federal policy favoring arbitration ... doubts as to whether a claim falls within the scope of [an] agreement should be resolved in favor of arbitrability.'" *Denney* v. *BDO Seidman, L.L.P.*, 412 F.3d 58, 68-69 (2d Cir. 2005) (omission in original) (quoting *ACE Capital Re Overseas Ltd.* v. *Cent. United Life Ins. Co.*, 307 F.3d 24, 29 (2d Cir. 2002)).

However, Section Four of the FAA dictates that where "there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *HDI Glob. SE* v. *Lexington Ins. Co.*, No. 16 Civ. 7241 (CM), 2017 WL 699818, at *4 (S.D.N.Y. Feb. 7, 2017) (internal quotation mark omitted) (quoting *Bensadoun* v. *Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). When a "party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Id.* (internal quotation mark omitted) (quoting *Oppenheimer & Co., Inc.* v. *Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995)); *see also Bensadoun*, 316 F.3d at 175 ("[T]he summary judgment standard is appropriate in cases where the District Court is required to determine arbitrability, regardless of whether the relief sought is an order to compel arbitration or to prevent arbitration."); *Cont'l U.K. Ltd.* v. *Anagel Confidence Compania Naviera, S.A.*, 658 F. Supp. 809, 812 (S.D.N.Y. 1987) ("Three requirements must be met before the Court may issue an order compelling arbitration pursuant to the Federal Arbitration Act. There must be (i) jurisdiction in admiralty; (ii) a written agreement to arbitrate; and (iii) an absence of triable issues concerning the making and performance of the arbitration agreement.").

## B.    Analysis

Here, the parties "do not dispute that *a* written agreement to arbitrate exists. Their disagreement is over *which, if any*, of the arbitration clauses ... governs the resolution of this dispute." *Cont'l U.K. Ltd.*, 658 F. Supp. at 812

(second emphasis added).  Put differently, the parties disagree with regard to "whether [they] have entered into a valid agreement to arbitrate."  *Nat'l Union Fire Ins. Co.*, 203 F. Supp. 3d at 317.  Petitioners argue that the parties have not done so for two reasons:  (i) the Voyage Charter's arbitration clause was not incorporated by reference in the Bills of Lading, and (ii) Petitioners are not parties to the Voyage Charter nor bound by its terms.  (*See* Pet'r Br.).  Importantly, however, the parties do not dispute the fact that Petitioners were not signatories to the Voyage Charter.  It is undisputed that Starr seeks to invoke the Voyage Charter's arbitration clause against a non-signatory to that agreement.

"The Supreme Court has counseled that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"  *Matter of Arbitration Between S & R Co. of Kingston & Latona Trucking, Inc.*, 984 F. Supp. 95, 100 (N.D.N.Y. 1997) (quoting *United Steelworkers* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)) (citing *First Options of Chi., Inc.* v. *Kaplan*, 514 U.S. 938, 943 (1995)), *aff'd sub nom. S & R Co. of Kingston* v. *Latona Trucking, Inc.*, 159 F.3d 80 (2d Cir. 1998).  Under certain circumstances, however, a party may be bound by an arbitration agreement to which it is not a signatory.  *See, e.g., Smith/Enron Cogeneration Ltd. P'ship, Inc.* v. *Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 97 (2d Cir. 1999); *Thomson-CSF, S.A.* v. *Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995).  If, for example, "a charter party's arbitration clause is expressly incorporated into a bill of lading, non-signatories of the charter party

who are linked to that bill through general principles of contract law or agency law may be bound." *Lucky Metals Corp.* v. *M/V Ave*, No. 95 Civ. 1726 (JSM), 996 A.M.C. 265, 267 (S.D.N.Y. 1995) (quoting *Cont'l U.K. Ltd.*, 658 F. Supp. at 813); *see also Son Shipping Co.* v. *De Fosse & Tanghe*, 199 F.2d 687, 688 (2d Cir. 1952)). "Additionally, it may be proven that the non-signatory is an alter ego of the corporation which signed the charter party, or that the signatory was acting in an agency capacity for the nonsignatory." *Cont'l U.K. Ltd.*, 658 F. Supp. at 813.

Here, Starr has only attempted the first of these methods: Starr argues (i) that the Voyage Charter's arbitration clause is expressly incorporated by reference in the Bills of Lading and (ii) Petitioners are linked to that Bill through general principles of contract law and agency law and therefore bound by the arbitration clause's terms.[9] To succeed in this argument, Starr must demonstrate the satisfaction of two prerequisites: Starr must show that (i) the Voyage Charter's arbitration clause was expressly incorporated into a bill of lading and (ii) the clause's language is broad enough to encompass Starr's disputes with the nonsignatory Petitioners. *See, e.g.*, *Progressive Cas. Ins. Co.* v. *C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 47-48 (2d Cir. 1993) ("[W]e have held that an arbitration agreement restricted to the immediate parties does not bind a non-party, notwithstanding words of

---

[9]     Because Starr has not argued that Petitioners are alter egos of A&B, or that A&B was acting in an agency capacity for Petitioners when it executed the Voyage Charter, the Court will not consider whether the arbitration clause could bind Petitioners on that second, alternate basis.

incorporation or reference in a separate contract by which that non-party is bound."); *Cont'l Ins. Co.* v. *M/V NIKOS N*, No. 00 Civ. 7985 (RLC), 2002 WL 530987, at *3 (S.D.N.Y. Apr. 9, 2002); *Upstate Shredding, LLC* v. *Carloss Well Supply Co.*, 84 F. Supp. 2d 357, 365-66 (N.D.N.Y. 2000); *Lucky Metals Corp.*, 996 A.M.C. at 267; *Cont'l U.K. Ltd.*, 658 F. Supp. at 814.

Here, the Court finds that because the second of these requirements is not met, the Court need not determine whether Starr has satisfied the first. The Court cannot find Petitioners bound by the Voyage Charter's arbitration clause.

### 1.     The Scope of Arbitration Clauses

To determine whether a party's invocation of an arbitration clause is proper, a court must first identify whether the clause in question is narrow or broad in scope. *See, e.g.*, *Louis Dreyfus Negoce S.A.* v. *Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (directing courts charged with "determin[ing] whether a particular dispute falls within the scope of an agreement's arbitration clause" to "recogniz[e] there is some range in the breadth of arbitration clauses" and, as the first step in their inquiry "classify the particular clause as either broad or narrow"); *Imp. Exp. Steel Corp.* v. *Miss. Valley Barge Line Co.*, 351 F.2d 503, 505-06 (2d Cir. 1965). "Courts have consistently drawn a distinction between arbitration clauses specifically identifying the parties to which it applies, and a broader form of arbitration clause which does not restrict the parties." *Ogden Power Dev.-Cayman, Inc.* v. *PMR Ltd. Co.*, No. 14 Civ. 8169 (PKC), 2015 WL 2414581, at *4 (S.D.N.Y.

May 21, 2015) (internal quotation marks omitted) (quoting *Complaint of Southwind Shipping Co., S.A.*, 709 F. Supp. 79, 82 (S.D.N.Y. 1989)), *appeal withdrawn* (Oct. 6, 2015); *accord e.g.*, *M/V NIKOS N*, 2002 WL 530987, at *3-4 (collecting cases); *Thyssen, Inc.* v. *M/V MARKOS N*, No. 97 Civ. 6181 (MBM), 1999 WL 619634, at *4-5 (S.D.N.Y. Aug. 16, 1999), *aff'd sub nom. Thyssen, Inc.* v. *Calypso Shipping Corp., S.A.*, 310 F.3d 102 (2d Cir. 2002).

In the maritime context, courts in this District have found that "[t]he quintessential 'broad' arbitration clause applies, by its terms, to 'all disputes arising under the charterparty.'" *M/V NIKOS N*, 2002 WL 530987, at *4 (quoting *Salim Oleochemicals, Inc.* v. *M/V Shropshire*, 169 F. Supp. 2d 194, 198 (S.D.N.Y. 2001) (collecting cases), *aff'd*, 40 F. App'x 626 (2d Cir. 2002). "The typical 'narrow' clause, by contrast, refers specifically to disputes 'between owners and charters,' and thus 'applies only to disputes between the particular parties identified in the clause.'" *M/V NIKOS N*, 2002 WL 530987, at *4 (quoting *Thyssen, Inc.*, 1999 WL 619634, at *4); *see also, e.g.*, *Integr8 Fuels Inc.* v. *Daelim Corp.*, No. 17 Civ. 2191 (LTS), 2017 WL 1483326, at *3 (S.D.N.Y. Apr. 25, 2017) ("[L]ower courts in this circuit, following the guidance of the Second Circuit, have distinguished between narrow arbitration clauses in the maritime context — for example, arbitration clauses that 'provide that disputes between owners and charterers must be arbitrated generally apply only to disputes between the particular parties identified in the clause' — and broader clauses[.]" (quoting *Trade Arbed, Inc.* v. *M/V Kandalaksha*, 2003 WL 22097460, at *3 (S.D.N.Y. June 23, 2003)); *D/S Norden A/S* v. *CHS de Paraguay, SRL*,

No. 16 Civ. 2274 (LTS), 2017 WL 473913, at *2 (S.D.N.Y. Feb. 3, 2017) ("The Second Circuit has noted, in discussing a nearly identical arbitration clause (which required arbitration between 'the Disponent Owners and the Charterers') that this language 'is restrictive in scope.'" (quoting *Imp. Exp. Steel Corp.*, 351 F.2d at 505)).

### 2. The Voyage Charter's Arbitration Clause Is Narrow in Scope and Does Not Bind Petitioners

Here, the arbitration clause in the Voyage Charter applies by its terms "[s]hould any dispute arise between Owner and Charterer." (Pet'r 56.1, Ex. 1(C), ¶ 15). This language is restrictive in scope and clearly establishes that the Voyage Charter's arbitration clause is narrow and applies only to disputes between the particular parties identified therein, the "Owner and Charterer." *See, e.g.*, *Cont'l U.K. Ltd.*, 658 F. Supp. at 814 (holding that under *Import Export Steel*, "if the scope of the clause is limited to disputes between owners and charterers, [a] [c]ourt may compel two parties to arbitrate only if each can be construed as either an owner or charterer").

As aforementioned, the Voyage Charter identifies the "Owner" referenced therein as "the disponent owner of the Vessel who signs the present Charter Party identified at the beginning of this Charter Party." (Pet'r 56.1, Ex. 1(C)). And at its beginning, the Voyage Charter Party identifies the "Owner of the vessel" as A&B Limited. (*Id.*).[10] Here then, the disponent owner is A&B

---

[10]    In this preliminary section, the relevant vessel is identified as the *MV NADJA-MARIA*. Because the *M/V Lita* is described as the relevant vessel in the body of the Voyage Charter (*see* Pet'r 56.1, Ex. 1(C), ¶ 6), and because the parties have neither claimed that the Voyage Charter applies to the *MV NADJA-MARIA* rather than the *M/V Lita* nor

Limited, and it is against this party and this party alone that the Voyage Charter's narrow arbitration clause, limited to disputes arising "between Owner and Charterer," may be invoked by the Ternium Entities or Starr, their subrogor.

Starr "asks the Court to expand the arbitration clause beyond its plain meaning, contrary to the settled rule in this jurisdiction." *Cont'l U.K. Ltd.*, 658 F. Supp. at 814. Starr argues that Petitioners are the true owners of the *M/V Lita,* and thus bound by the Voyage Charter's arbitration clause governing disputes involving "Owners." (*See* Resp't Br. 13-16). But whether Petitioners are the vessel's true owners or not, the plain text of the Voyage Charter limits the scope of its obligations to bind a specific party, "the disponent owner of the Vessel who signs the present Charter Party identified at the beginning of this Charter Party," which is A&B Limited. (*See* Pet'r 56.1, Ex. 1(C)). Abundant case law in this Circuit makes clear that "scope language 'should be carefully if not restrictively construed' and may not be 'unduly stretch[ed]' to include nonsignatories." *Cont'l U.K. Ltd.*, 658 F. Supp. at 814 (alteration in original) (quoting *Imp. Exp. Steel Corp.*, 351 F. 2d at 506) (collecting cases). Therefore, the Court will not unduly stretch the Voyage Charter beyond its plain, textual limits, from "the disponent owner" A&B to the alleged true owners, Petitioners. Starr cannot force Petitioners to arbitrate because Petitioners are not bound by

---

ascribed any import whatsoever to the apparent misidentification, the Court presumes that it was a typographical error.

the narrow arbitration clause of the Voyage Charter, to which agreement Petitioners are not a signatory.

To be clear: The Court does not here opine on Petitioners' liability in general with regard to the Cargo Claim, Starr's capacity to compel A&B to arbitrate that claim, or the viability of any litigation or arbitration beyond the instant case. The Court's holding is limited to the specific facts of this litigation and its underlying arbitration.

## CONCLUSION

For the foregoing reasons, Petitioners' motion for summary judgment is GRANTED and Starr's cross-motion is DENIED. The underlying arbitration is hereby enjoined because there is no valid arbitration agreement between these parties. *See In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d at 141 (affirming right of district court to enjoin arbitration where parties have not entered into valid and binding arbitration agreement).

This case is DISMISSED as against Starr and DISMISSED WITHOUT PREJUDICE as against Marinsa. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case. If Petitioners wish to reinstate this action and move for entry of default judgment against Marinsa, Petitioners must seek leave from the Court to do so on or before June 14, 2017.

SO ORDERED.

Dated:    May 31, 2017
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge